1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    HAROLD DAVIS,                           Case No.  14-cv-00853-JSC
                 Plaintiff,
8
                                             **ORDER RE: CROSS-MOTIONS FOR**
9         v.                                 **SUMMARY JUDGMENT**

10   PENSION TRUST FUND FOR                   Re: Dkt. Nos. 57, 60
     OPERATING ENGINEERS, et al.,
11
                 Defendants.
12

13        Plaintiff Harold Davis contends that Defendants Pension Trust Fund for Operating

14   Engineers and the Board of Trustees of the Pension Trust Fund for Operating Engineers

15   (collectively "Defendants" or "Trust Fund" and "the Trustees," respectively) incorrectly calculated

16   his award of disability retirement benefits.  The parties filed cross-motions for summary judgment,

17   which are presently before the Court.  (Dkt. Nos. 57 & 60.)  Having considered the motions and

18   having had the benefit of oral argument on October 29, 2015, the Court concludes that the benefit

19   plan language at issue was ambiguous and that Defendants' interpretation of that language was not

20   unreasonable.  The Court also concludes that equitable estoppel does not apply.  Accordingly, the

21   Court GRANTS Defendants' motion and DENIES Plaintiff's motion.[1]

22                                    **BACKGROUND**

23        **A.  Plaintiff Harold Davis**

24        Plaintiff was born on February 29, 1960.  (Administrative Record ("AR") 480.)  He has

25   long history of degenerative osteoarthritis of his knees and has had several surgeries of both knees.

26   Prior to his retirement, he worked as a crane operator.  (AR 509.)  Plaintiff stopped work in

27   ─────────────────────
28   [1] The parties have consented to the disposition of this case before the undersigned magistrate
     judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

1  December 2008 to have knee replacement surgery, and had his right knee done in March 2009 and

2  his left in August 2009.  (AR 507.)  He submitted a claim for disability retirement benefits in April

3  2011 following the Social Security Administration's finding that he was disabled effective

4  December 22, 2008.  (AR 492, 497.)  At the time of his retirement, he was 49 years old.  (AR

5  524.)

6      **B.  The Pension Plan**

7      During the course of Plaintiff's employment he was a participant the Pension Plan for the

8  Pension Trust Fund for Operating Engineers ("the Plan").   (AR 518.)  The Plan is an "employee

9  benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA")

10  § 3(3), an "employee benefit pension plan" as defined by ERISA § 3(2), and a "multiemployer

11  plan" as defined in ERISA § 3(37).  The Trust Fund is jointly administered and is maintained

12  pursuant to the Labor Management Relations Act § 302(c).

13      The Plan is funded by employer contributions made pursuant to collective bargaining

14  agreements between the contributing employers and Operating Engineers, Local Union No. 3. (AR

15  414-415.) The Plan provides for disability retirement benefits for participants who become totally

16  disabled before they reach the age of 62. (AR 307.)  A participant is totally disabled under Section

17  3.07 of the Plan if the participant is entitled to a Social Security Disability Benefit or its

18  equivalent.  (AR 308.)

19      **1.      The Pre-2003 Plan**

20      Before January 1, 2003, the Plan provided disability retirement benefits for participants

21  under age 62 with 10 or more years of credited service. (AR 17.)  Section 3.06 of the Plan set forth

22  the following eligibility requirements for a participant to receive a disability retirement benefit:

23      a.      He has not yet become age 62.

24      b.      He has, without a Permanent Break in Service,

25          (1) At least 15 Years of Credited Service, or

26          (2) At least 10 Years of Credited Service, exclusive of any
                Credited Future Service earned in Continuous Non-
                Covered Employment.

27      c.      He has as a result of work in Covered Employment earned 2
                quarters of Credited Future Service.

28

      d.      He is totally disabled as defined in Section 3.07.

(AR 17.)

Section 3.08 set forth the amount of the benefit based on the year of disability, and for disabilities on or after January 1, 1991, the Plan provided:

> d.      For disabilities on or after January 1, 1991, for participants who satisfy 3.06.b(1) [at least 15 years of credited service], or participants at least age 50 who satisfy 3.06.b(2) [at least 10 years of credited service], 90% of regular pension amount; and

> e.      For disabilities on or after January 1, 2000, for participants under age 50 who satisfy 3.06(b)(2) [at least 10 years of credited service], 50% of regular pension amount.

(AR 18.)

### 2.      The 2003 Amendment

At a meeting on January 27, 2003, the Plan's Board of Trustees decided to add a retirement benefit for vested employees with fewer than 10 years of credited service.  The meeting minutes reflect that "[t]he Board approved and authorized an amendment to the Plan allowing participants who have a Social Security Disability Award to commence with 5 to 10 pension credits to receive benefits immediately on an actuarial equivalent basis instead of waiting until their tenth anniversary." (AR 195).

Accordingly, the Plan was amended in May 2003 (Amendment No. 9) to add an eligibility category for individuals who worked at least 5, but less than 10 years.[2]  After Amendment No. 9, Section 3.06 was rewritten to read as follows:

> A Participant who has retired, has not yet become age 62, is totally disabled as defined in Section 3.07 and has filed an application for benefits in accordance with Section 9.01 is entitled to receive a Disability Pension if he meets the additional requirements described in a. or b. below.

> a.      In order to receive a Disability Pension in an amount described in the application Subsections a., b., c., d., or e. of Section 3.08, the Participant must have without a Permanent

---

[2] The 2005 Edition of the Summary Plan Description states that "[i]f regardless of your age, you have at least 5 but less than 10 years of credited Service (excluding Service in Continuous Non-Covered Employment) your Disability Pension will be the Actuarial Equivalent of the pension amount payable at Normal Retirement Age."  (AR 250.)

United States District Court
Northern District of California

United States District Court
Northern District of California

Break in Service:

    (1)    At least 15 Years of Credited Service, or at least 10 Years of Credited Service, exclusive of any Credited Future Service earned in Continuous Non-Covered Employment; and

    (2)    As a result of work in Covered Employment earned 2 quarters of Credited Future Service.

    b.    In order to receive a Disability Pension in an amount described in Subsection f. of Section 3.08, the Participant must have without a Permanent Break in Service:

    (1)    At least 5 but less than 10 Years of Credited Service, exclusive of any Credited Future Service earned in Continuous non-covered Employment; and

    (2)    As a result of work in Covered Employment earned 2 quarters of Credited Future Service.

(AR 115.)  Thus, while pre-2003 Section 306.a referred only to the "under age 62" eligibility requirement, new Section 306.a referred instead to the requirement of 10 or more years of service. Similarly, while pre-2003 Section 306.b addressed the 15 and 10 years of service eligibility requirement, the new Section 306.b addressed only the new category of eligibility:  more than 5 but less than 10 years of service.

Section 3.08—the amount of the pension benefit—was also amended to include a new subsection f:

    f.    For a Participant who became totally disabled on or after January 1, 2003 and satisfies the requirements of Subsection 3.06.b but not Section 3.06.a, the Disability Pension shall be the Actuarial Equivalent of the pension amount that would otherwise have been payable at his Normal Retirement Age.

(AR 115.)  Thus, under this new Section 3.08.f, a participant who became disabled after January 1, 2003 and had less than 10 years of credited service but more than 5 (thus satisfying new section 3.06.b and not satisfying new 3.06.a), was entitled a benefit in the amount of the actuarial equivalent.  Although Amendment 9 rewrote section 3.06 so that sections 3.06.a and 3.06.b no longer referred to the same eligibility requirements as before, the Plan's previous cross-references to Section 3.06, and, in particular, the cross-references in Sections 3.08.d and 3.08.e, were not amended.  Section 3.08.d, which provided the 90% benefit amount, still cross-referenced Section

4

3.06.b.(1), even though amended 306.b(1) referred to the more than 5 but less than 10 years of service requirement whereas old 306.b(1) had referred to the 15 year service requirement. Similarly, Section 3.08.e, which provided for the 50% benefit amount for participants under age 50, continued to cross-reference Section 3.06.b.(2), even though it had been amended to reflect a mere requirement of 2 quarters of Credited Future Service whereas before the 2003 amendment it referenced the 10-year service requirement. (*Compare* AR 17 *with* AR 115.)   In other words, because Amendment 9 had moved the 15 and 10 year eligibility requirements to Section 3.06.a.(1), and then added Section 3.06.b. to refer to (1) at least 5 but less than 10 years of credited service, and (2) 2 quarters of Credited Future Service, Sections 3.08.d and e should have also been amended to change the cross-references from old 3.06.b to new 3.06.a.(1).

### 3.     2008 Amendment

In May 2008, Section 3.08 was amended to alter the benefit amounts for individuals who became disabled on or after July 1, 2008 (Amendment No. 21) by adding a new subsection "g" as follows:

> g.     For a Participant who becomes totally disabled on or after July 1, 2008,
>
> (1)     If the Participant either satisfies the requirements of Subsection 3.06.b.(1) or is at least age 50   and satisfies the requirement of Subsection 3.06.b.(2), the Disability Pension will be determined in accordance with Section 3.05 except the amount so determined cannot be less than 70% of the Regular Pension amount determined in accordance with Section 3.03.
>
> (2)     If the Participant has not yet become age 50 and satisfies the requirement of Subsection 3.06.b.(2), the Disability Pension will be determined in accordance with Section 3.05, except the amount so determined cannot be less than 50% of the Regular Pension amount determined in accordance with Section 3.03.
>
> (3)      If a Participant satisfies the requirements of Subsection 3.06.b. but not Section 3.06.a., the Disability Pension shall be the Actuarial Equivalent of the pension amount that would otherwise have been payable at his Normal Retirement Age.

(AR 148.)  As with Amendment 9 (the 2003 amendment), the erroneous cross-references to Section 3.06.b were carried forward into new Section 3.08.g, failing to account for Amendment

United States District Court
Northern District of California

9's substantive rewrite of section 3.06.

### 4.     2010 Amendment

In December 2010, the Board adopted Amendment No. 27 which corrected the drafting error from Amendment 9 with respect to Section 3.08.d and e, by cross-referencing the appropriate section of 3.06, that is, 3.06.a rather than 3.06.b.  (AR 172.)  Section 3.08.g, which contained the same erroneous cross-references, was not amended.

### B.  Plaintiff's Application for Benefits Under the Plan

When Plaintiff applied for Plan disability benefits in April 2011, he had accrued 9 years of credited service and 9 years of future credited service.  (AR 487, 528.)  Since he became disabled after July 2008, and had more than 5 but less than 10 years of service, he was eligible for benefits under Section 3.06.b and the amount of the benefit was to be determined by Section 3.08.g.  (AR 115, 148.)  Plaintiff was subsequently notified that he had been granted a benefit of $181 per month.  (AR 518-523.)  In a follow-up letter, the Trust Fund explained that the benefit calculation was based on an award for the actuarial equivalent benefit amount under Section 3.08.f of the Plan.[3]  (AR 533.)

Plaintiff appealed on the grounds that the calculation of his pension benefit was in error and it should have been calculated at a higher rate under Section 3.08.g(1).  (AR 538.)  The Board's Appeals Committee held its first hearing on his appeal less than a month later, and noted in a memorandum prepared in advance of the hearing that the dispute was over whether Plaintiff's benefit amount should be calculated at the actuarial equivalent rate or 70 percent of his pension amount as Plaintiff contends.  (AR 544.)  In particular, the memorandum notes the chronology of various amendments stating that "[a]s it is written in Amendment No. 21, Section 3.08.g refers to Section 3.06.b when it should be referring to Section 3.06.a (specifically 3.06.a(1)).  These Sections were discussed at length resulting in Amendment No. 27.  However when Amendment No. 27 was adopted, it failed to reference 3.08.g; it only referenced Sections 3.08.d and e."  (*Id.*)  At the hearing, Trustee Goff, one of the Appeals' Committee members, stated that they would

---

[3] Defendants represent—and Plaintiff does not dispute—that this reference to subsection f was in error and should have indicated that Plaintiff was being awarded benefits under Section 3.08.g(3) since he became disabled after July 2008.  (Dkt. No. 57 at 12 fn. 2.)

United States District Court
Northern District of California

obtain a "continued legal opinion" and Plaintiff would receive a written response.  (AR 557.)  The Trustees thereafter notified Plaintiff that they would consider the matter at their September 23, 2011 meeting following "review of [the] case by the Fund's Legal Counsel."  (AR 562.)

Richard Johnson, the Trust Fund's legal counsel, thereafter prepared a memorandum to the Appeals Committee which noted that "Section 3.08.g(1) and (2) contain typographical errors as a result of Amendment No. 9 to the Plan adopted on May 19, 2003, which were carried on through other amendments made after that date."  (AR 677.)  As a result, if "read literally" there are two possible ways to qualify for a benefit under 3.08.g(1): if the individual has "at least 5 years but less than 10 years of credited service, exclusive of any credited future service earned in continuous non-covered employment" or through "earning 2 quarters of credited future service."  (*Id.*)  Mr. Johnson thus noted that the question was "what should be done when there is an internal inconsistency/ambiguity in a plan document due to a scrivener's error." (*Id.*)

A week later, the Appeals Committee held a second hearing at which the "inconsistency" was discussed.

> MR. JOHNSON: Yeah.  But the section on Amendment 27 had an ambiguity in there.  Under that, you would – read literally, you would be entitled to both a 70 percent and an actuarial equivalent amount. In the new information that I sent, the further exhibits on – beginning on Page 17, show the history of how that language was arrived at.  And there was a mistake in the amendment, and those reference are to the wrong section numbers, and they should have been to 3.06a(1) after it got changed.

> THE APPELLANT: We only go by what is written and what has been adopted.  Amendment 27 has no jurisdiction in my case because everything in there does not deal with being in it before July 1 of 2008. What deals with me is everything after July 1 of 2008 and what deals with my case is Section 3.08.g(1).

> MR. JOHNSON: But 3.08.g(3) also deals with your case. That's the ambiguity. It looks like both g(1) and g(3) deal with your case. And only one can deal with it.

> THE APPELLANT: Sir, we go in order. We can't say (3) applies to (1) when (1) is first. (1) is first. If my situation does not apply to (1), then you go to (2). If (2) doesn't apply to my situation, then you go to (3). But you can't say (3) overrules (1).

> MR. JOHNSON: No, they're all supposed to be separate. There was a

United States District Court
Northern District of California

7

United States District Court
Northern District of California

mistake in (1), a mistaken reference back to the wrong section in 3.06.

THE APPELLANT: You're trying to explain to me that the agreed-upon amendment is a mistake.

MR. JOHNSON: There was a mistake contained in that, yes.

(AR 579:13 – 580:22.)

The Appeals Committee denied Plaintiff's appeal on September 27, 2011 concluding that although he would qualify under each of the three subsections to Section 3.08.g, each of which provided for a different level of benefits—70 percent, 50 percent, and actuarial, respectively—this was the result of an ambiguity in the Plan. (AR 586.) The Committee concluded that Plaintiff was only entitled to the actuarial benefit based on an "interpret[ation of] the Plan according to its intent as evidenced by the [Summary Plan Description] and history of the relevant Plan changes, and not [to] apply the scrivener's errors in a way to pay additional Plan benefits where none were ever intended." (AR 587.)

Plaintiff requested a rehearing of his appeal (AR 704), which was granted, and his rehearing was held November 18, 2011, at which Plaintiff personally appeared. (AR 592-669.) In a written decision, the Appeals Committee thereafter reaffirmed its decision as stated in the September 27, 2011 letter. (AR 670.) The Trustees reviewed Plaintiff's appeal at its December meeting and affirmed the Appeals Committee's decision that Plaintiff was entitled to a pension under Section 3.08.g(3), but not under Sections 3.08g(1) or (2). (AR 701.)

**C.   Procedural History**

Over two years later, Plaintiff filed this action against Defendants seeking review of the Board's decision under ERISA 29 U.S.C. § 1132(f). (Dkt. No. 1.) Defendants answered and counterclaimed for reformation under ERISA § 502(a)(3)(B)(ii) based on a scrivener's error in the Plan. (Dkt. No. 12.) The Court subsequently bifurcated Plaintiff's claim from Defendants' counterclaim. (Dkt. No. 43.) The underlying cross-motions for summary judgment on Plaintiff's claim for relief followed. (Dkt. Nos. 57 & 60.)

**STANDARD OF REVIEW**

A plan participant may sue under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

8

United States District Court
Northern District of California

benefits under the terms of the plan..." 29 U .S.C. § 1132(a)(1)(B). "A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." *Firestone Tire and Rubber Company v. Brunch*, 489 U.S. 101, 115 (1989).  In applying the abuse of discretion standard, courts should consider any conflict of interest of the plan administrator.  *Abatie v. Alta Health & Life Ins*. Co., 458 F.3d 955, 965 (9th Cir. 2006).

Here, it is undisputed that the Board of Trustees has discretion to administer, interpret, and determine eligibility for Plan benefits (AR 427-433), and thus an abuse of discretion standard of review applies.  *See Firestone*, 489 U.S. at 115 (noting that if a plan grants an administrator the right to determine eligibility for benefits or to "construe the terms of the plan," it has discretionary authority).  Further, Plaintiff has failed to establish that the Board has a conflict of interest affecting the standard of review.  Such a conflict of interest exists "where it is the employer itself that both funds the plan and evaluates the claim."  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 106 (2008).  Trustees of a multiemployer plan funded by employer contributions—such as with the Board of Trustees here—do not have a conflict of interest.  *Anderson v. Suburban Teamsters of N. Illinois Pension Fund Bd. of Trustees*, 588 F.3d 641, 648 (9th Cir. 2009).

Plaintiff's contention that a conflict nonetheless exists because the Trustees are biased and are attempting to cover up their mistakes is unpersuasive.  Plaintiff does not cite any legal authority to support this theory.  And even if he could, the record is replete with the Board's acknowledgement of the drafting errors in the Plan amendments; that the Board ultimately interpreted the Plan contrary to Plaintiff's construction is not in and of itself a basis for finding that a conflict of interest exists.

Accordingly, Plaintiff's denial of benefits is reviewed under an unaltered abuse of discretion standard.

## DISCUSSION

Under the abuse of discretion standard, "the Trustees' interpretation of Plan language is entitled to a high level of deference and will not be disturbed unless it is not grounded on any

reasonable basis.  *Tapley v. Locals 302 & 612 of Int'l Union of Operating Engineers-Employers Const. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) (internal quotation marks and citation omitted).  A court's deference is "particularly weighty where, . . . the Plan confers broad power on the administrator to determine eligibility for benefits under the plan, and the interpreted language is ambiguous." *Id.* (internal quotation marks and citation omitted).  Even if the court would have reached a different interpretation, the Trustees' decision must be upheld if it "has rational justifications." *Id.* (internal quotation marks and citation omitted).  The Trustees, however, will have abused their discretion if they (1) construe the Plan in a way that clearly conflicts with the Plan's plain language, (2) interpret the Plan in such a way as to render other provisions meaningless, or (3) interpret the Plan in a way that "lacks any rational nexus" to the Plan's primary purpose. *Id.* (quoting *Burditt v W. Growers Pension Plan*, 636 F.Supp. 1491, 1498 (C.D. Cal. 1986)).

### A.     The Trustees did not Abuse Their Discretion

"[T]erms in an ERISA plan should be interpreted in an ordinary and popular sense as would a [person] of average intelligence and experience." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (internal quotation marks and citation omitted).  Read literally, section 3.08.g provides a Plan participant in Plaintiff's position—totally disabled after July 2008, under age 50, and more than 5 but less than 10 years of service—with three different benefit levels: a 70% pension (Section 3.08.g(1)), a 50% pension, (Section 3.08.g(2)), and an actuarial equivalent benefit (Section 3.08.g(3)). Section 3.16 of the Plan, however, provides that a participant is entitled to only one benefit.  (AR 21.)  The Plan is thus ambiguous as to which benefit level applies and who decides: the plan participant or the Trustees? *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation."); *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002) (favorably quoting an Eighth Circuit case for the proposition that "'We agree that the presence of conflicting provisions is apt to render a contract ambiguous'"); *see also Renfro v. Funky Door Long Term Disability Plan*, 686 F.3d 1044, 1053 (9th Cir. 2012) (noting

United States District Court
Northern District of California

1  that whether a contractual provision is ambiguous is a question of law).  It is also ambiguous

2  because it is illogical.  *See Idaho v. Coeur d'Alene Tribe*, 2014 WL 2818682 *2 (D. Id. June 23,

3  2014).  Assuming it is the participant's choice—something the Plan does not say--why would a

4  participant choose the 50% benefit rather than the 70% benefit?

5          Section 3.08.g is also ambiguous because it provides no benefit whatsoever for a

6  participant who became disabled after July 2008 but had more than 10 and even more than 15

7  years of service.  Because Section 3.08 refers only to the eligibility requirements of 3.06.b, and not

8  also Section 3.06.a, it only provides a benefit amount for a participant who worked more than 5

9  but less than 10 years.  Thus, under Plaintiff's interpretation, if he had worked one more year of

10  credited service, and thus had 10 years of service, he would not have been entitled to *any* benefit

11  amount.  This illogical result creates an ambiguity.  *See HSBC Bank USA Nat. Ass'n v. Dara*

12  *Petroleum, Inc.*, 2010 WL 2197525 *5 (E.D. Cal. May 28, 2010) (finding contract term

13  ambiguous because it was "nonsensical on its face").

14          Given that the Plan does not state which of the three Section 3.08.g benefit levels applies

15  to a participant in Plaintiff's circumstances, and given that the Plan read literally does not provide

16  any benefits to a participant disabled after July 2008 with more than ten years, and only provides

17  benefits to those with more than five but less than ten years of credited service, the Court cannot

18  conclude that the Trustees' interpretation of Section 3.08.g as applied to Plaintiff was an abuse of

     discretion.

19          Plaintiff's insistence that the Trustees' interpretation improperly conflicts with the Plan

20  language rather than interprets it is unpersuasive.  As explained above, the Plan does not provide

21  how the choice is made between the three Section 3.08.g benefit levels or who makes that choice;

22  thus, the Trustees' decision to choose 3.08.g(3) does not conflict with the Plan.  Plaintiff's reliance

23  on *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1198 (9th Cir. 2010),

24  and *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002),

25  is misplaced.  In *Mitchell*, the Ninth Circuit held that where the certificate of insurance and the

26  summary plan description included conflicting definitions of disability, the plan administrator

27  abused its discretion in applying the more limited definition in the summary plan to deny

28

plaintiff's claim for benefits.  *Mitchell*, 611 F.3d at 1198-99.  Similarly, in *Bergt,* the ambiguity arose out of contradictions between the plan master document and the summary plan description. *Bergt*, 293 F.3d 1145 ("[i]n this case, we are not dealing with an ambiguous word or phrase, *or conflicting provisions in the same document*, as we were in *Vizcaino* and *Richardson*, but with a substantially more egregious ambiguity arising from an inconsistency between the plan master document and plan summary.") (emphasis added).  Here, in contrast, the Plan document itself is ambiguous because it provides for three different pension benefits for individuals in the same position without identifying how to decide which benefit level applies. That the Summary Plan Description provides that individuals in this same position are only entitled to a pension at the actuarial level (AR 250) is extrinsic evidence of intent, but not the source of the conflict or ambiguity.

### B.    The Trustees' Interpretation is Consistent With the Extrinsic Evidence

The Court's conclusion that the Trustees' interpretation was not unreasonable is further supported by the extrinsic evidence.  *See Richardson*, 112 F.3d at 985 ("when a plan is ambiguous, a court will examine extrinsic evidence to determine the intent of the parties").  That evidence leads to one conclusion: the Trustees intended to provide disabled participants with more than five but less than ten year of service with a benefit amount equal to the actuarial equivalent.

First, the January 27, 2003 Board minutes state: "The Board approved and authorized an amendment to the Plan allowing participants who have a Social Security Disability Award to commence with 5 to 10 pension credits to receive benefit immediately on an actuarial equivalent basis instead of waiting until their tenth anniversary."  (AR 195.)  This minute entry is consistent with the August 21, 2003 cover letter from the Plan's then-consultant which recites that "the Board of Trustees voted to provide Disability Pensions to Participants who had at leave five but less than ten Years of Credited Service...[t]he amount of the Disability Pension available to this class of Participant would be the Actuarial Equivalent of the accrued benefit at Normal Retirement Age."  (AR 713.)  The consultant attached Amendment 9 to the cover letter.

Second, the Summary Plan Description (2005 ed.) states that "[i]f regardless of your age, you have a last 5 but less than 10 years of credited Service (excluding Service in in Continuous

United States District Court
Northern District of California

1   Non-Covered Employment) your Disability Pension will be the Actuarial Equivalent of the

2   pension amount payable at Normal Retirement Age."  (AR 250.)

3       Third, the history of the Plan amendments demonstrates that the cross references to Section

4   3.06.b in 3.08.g.(1) and (2) is an error, an error that was carried through in amendment after

5   amendment.  The error in the final amendment in May 2010, is particularly hard to understand as

6   it was at that time that the Trustees corrected the cross references in Sections 3.08.d, and 3.08.e,

7   but did not in Section 3.08.g.  This omission does not demonstrate an intent to leave as it was;

8   instead, it is evidence of the lack of care taken in documenting the amendments.  Regardless, the

9   extrinsic evidence is clear that the Trustees always intended to give those with fewer than ten

10  years of service, as Plaintiff, the actuarial equivalent and nothing more.  There is no evidence that

11  the Trustees ever intended to give a participant with fewer than ten pension credits a 50% or 70%

12  benefit, and no evidence that the Trustees intended to deprive those participants disabled after July

13  2008 with ten or more years of service of any benefit.

14      The Court cannot conclude that the Trustees' interpretation is unreasonable in light of this

15  context.  *See Canseco v. Constr. Laborers Pension Trust for S. California*, 93 F.3d 600, 606 (9th

16  Cir. 1996) ("The question we must ask in resolving this dispute is not whose interpretation of the

17  plan documents is most persuasive, but whether the Trustees' interpretation is unreasonable.")

18      **C.   The Doctrine of *Contra Proferentem* Does not Apply**

19      Plaintiff's suggestion that under the doctrine of *contra proferentem* any ambiguities in the

20  Plan should be construed in his favor is wrong.  Although the general rule is that courts "must

21  construe ambiguities in an ERISA plan against the drafter and in favor of the insured," *Barnes v.*

22  *Indep. Auto. Dealers Ass'n of California Health & Welfare Benefit Plan*, 64 F.3d 1389, 1393 (9th

23  Cir. 1995), this rule does not apply where "the plan grants the administrator discretion to construe

24  its terms."[4]  *Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 625 (9th Cir. 2007).

25  _____

26  [4] The other two exceptions apply as well and render the cases cited by Plaintiff inapplicable—the
    Plan is the result of a collective-bargaining agreement (AR 431) and is self-funded (AR 419).  *See,*
27  *e.g.*, *Barnes*, 64 F.3d 1392-93 (applying the rule to construe ambiguities in favor of the insured
    and against the drafter without noting the *Blakenship* factors, but where, unlike here, the plan
28  failed to grant any discretionary authority to the administrator); *Patterson v. Hughes Aircraft Co.*,
    11 F.3d 948, 951 n.3 (9th Cir. 1993) ("the rule does not apply to ERISA plans that are the product
    of collective bargaining agreements reached after arms-length bargaining between parties of equal

13

Where the plan grants discretion to the administrator, as here, it is the administrator who resolves ambiguities in the plan's language.  (AR 414.)  The only question for a reviewing court is whether the administrator's interpretation is reasonable.  *Day v. AT & T Disability Income Plan*, 698 F.3d 1091, 1098 (9th Cir. 2012).  As discussed above, the Plan language is ambiguous and the Trustees' interpretation is not unreasonable.

### D.      Equitable Estoppel Does Not Apply

Finally, Plaintiff contends that even if the Trustees did not abuse their discretion, Defendants are estopped from denying him the higher amount of benefits.  "An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation and extraordinary circumstances."  *Pisciotta v. Teledyne Indus., Inc*., 91 F.3d 1326, 1331 (9th Cir. 1996).   Under equitable estoppel, "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (internal citation omitted).  In addition,

> to maintain a federal equitable estoppel claim in the ERISA context, the party asserting estoppel must not only meet the traditional equitable estoppel requirements, but must also allege:  (1) extraordinary circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan.

*Id*. at 957.

Plaintiff contends that he detrimentally relied on the language of the Plan suggesting that he would have a choice of benefit amounts if he retired before reaching age 50 with  9 years of service, but he has otherwise failed to establish the requirements for equitable estoppel in an ERISA action.  There is nothing in the record to demonstrate that he communicated his reliance on the Plan language either at the time he applied for early retirement or in the appeals process, or

power").

14

that he was able to continue working beyond December 2008 such that his disability was something other than involuntary.  The ultimate weakness in Plaintiff's estoppel claim, however, is his failure to offer evidence of a misrepresentation "made to the employee involving an oral interpretation of the plan." *Pisciotta v. Teledyne Indus., Inc*., 91 F.3d 1326, 1331 (9th Cir. 1996). In *Pisciotta*, the court noted that there are

> two additional prerequisites on a plaintiff attempting to allege a claim of equitable estoppel in an ERISA action. First, the provisions of the plan at issue must be ambiguous such that reasonable persons could disagree as to their meaning or effect. *Greany v. Western Farm Bureau Life Ins. Co*., 973 F.2d 812, 821 (9th Cir.1992). Second, representations must be made to the employee involving an oral interpretation of the plan. *Id*. "Unless both conditions are met ... a beneficiary has no equitable estoppel claim." *Greany*, *supra* at p. 821–822, *quoting Simmons v. Southern Bell Tel. and Tel. Co*., 940 F.2d 614, 618 (11th Cir.1991).

*Pisciotta*, 91 F.3d at 1331.  Although the Ninth Circuit's recent decision in *Gabriel* framed this factor as requiring a showing "that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan" citing *Spink v. Lockheed Corp*., 125 F.3d 1257, 1262 (9th Cir. 1997) ("that representations were made involving an oral interpretation of the plan"), there is no indication that the requirement that the misrepresentation be oral has been overruled.  *Gabriel*, 773 F.3d at 957.  Even if it had been in some way, there is no evidence of an affirmative written misrepresentation beyond the ambiguous Plan document itself.

Finally, beyond asserting that these are extraordinary circumstances, Plaintiff has made no effort to demonstrate why the circumstances here are in fact extraordinary.  *See, e.g*., *Gabriel*, 773 F.3d at 957 ("courts have held that making a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part, as well as conduct suggesting that [the employer] sought to profit at the expense of its employees, a showing of repeated misrepresentations over time, or evidence that plaintiffs are particularly vulnerable, can constitute extraordinary circumstances.") (internal citation and quotation marks omitted).

At oral argument Plaintiff cited *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008), for the proposition that Defendants were obligated to affirmatively advise Plaintiff that he should place into the administrative record any evidence supporting an equitable estoppel claim.  *Saffon* does not support this argument; it holds merely that a fiduciary

must give a beneficiary a description of any additional information needed to perfect a claim, and to do so in a manner that can be understood by the beneficiary. *Id.* at 870. This holding does not apply to the facts of this case. Moreover, Plaintiff has still not identified any misrepresentation—oral or written—upon which he detrimentally relied, other than the ambiguous Plan language itself. This showing is insufficient to defeat Defendants' motion for summary judgment.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Dkt. No. 57) is GRANTED and Plaintiff's cross-motion (Dkt. No. 60) is DENIED. In light of this ruling, Defendants' cross-claim for reformation is dismissed as MOOT.

**IT IS SO ORDERED.**

Dated: November 2, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge